# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| STEVEN SCOTT,<br><br>    Plaintiff<br><br>v.<br><br>STEVE SISOLAK, et al.,<br><br>    Defendants | Case No.: 2:22-cv-01801-APG-EJY<br><br>**Order Denying Scott's Motion for Summary Judgment and Granting in Part Defendants' Motion for Summary Judgment**<br><br>[ECF Nos. 44, 47, 50] |

Steven Scott sues several Nevada officials and Nevada Department of Corrections (NDOC) employees for violating his civil rights under 42 U.S.C. § 1983 and Article 1 § 6 of the Nevada Constitution while Scott was incarcerated. Specifically, Scott alleges that the defendants inflicted cruel and unusual punishment by being deliberately indifferent to his serious medical needs relating to his colorectal and prostate cancer.[1] Scott also alleges that the defendants had a policy, pattern, practice, or custom of medical providers intentionally signing documents illegibly to deprive inmates of adequate medical care and the right to file grievances.[2]

Scott moves for partial summary judgment on his deliberate indifference claims, arguing that there is no genuine dispute that the defendants unreasonably delayed diagnosing his colorectal cancer and that he suffered pain due to the delay. The defendants respond that they are entitled to qualified immunity. They also assert that genuine disputes remain over whether the delays were due to a reasonable disagreement between medical providers in the context of

---

[1] These claims are asserted against Terence Augustin, Michael Minev, Sonya Carrillo, Benedicto Guteirrez, and Rochelle Ross. ECF No. 26.

[2] These claims are asserted against Steve Sisolak, Barbara Cegavske, Aaron Ford, Charles Daniels, Minev, Joseph Lombardo, Francisco Aguilar, James Dzurenda, and Kenneth Williams. ECF No. 26.

both a prison environment and the COVID-19 pandemic and whether Scott was harmed by the delays.

The defendants move for summary judgment on all of Scott's claims, arguing that they are entitled to qualified immunity, several individual defendants did not personally participate in the relevant conduct, I lack jurisdiction over Scott's state law claims, and Scott has not raised a genuine dispute of material fact to support punitive damages. Scott responds that he has met his burden by identifying genuine disputes of material fact for each of the claims and that the law is clearly established.

The parties are familiar with the facts, so I repeat them here only as necessary to decide the motions. I grant Scott's motion as to his pain but deny it on all other issues because genuine disputes of material fact remain over whether the defendants' delays were due to subjective indifference to Scott's serious medical needs given the totality of the circumstances. I grant the defendants' motion as to Scott's claims regarding illegible signatures because Scott has not raised a genuine dispute of material fact that would support those claims and the law is not clearly established. I dismiss Scott's state constitutional claims without prejudice because I lack subject matter jurisdiction over them. I deny the defendants' motion as to all other claims.

**I.  DISCUSSION**

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The party seeking summary judgment bears the initial burden of informing the court of the basis for its

motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial.").  I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

### A. There is a genuine dispute of fact whether the defendants were deliberately indifferent given Scott's medical history.

Scott argues that both his expert and the defendants' expert agree that Scott's cancer was a serious medical need and there was an unreasonable delay in diagnosing the cancer.  The defendants respond that both experts testified to a negligence standard that is less than what is needed to show deliberate indifference.  The defendants also argue that there are disputes of fact as to whether the special circumstances of prison healthcare and the COVID-19 pandemic made the delays reasonable.  Finally, the defendants argue they are entitled to qualified immunity.

The Eighth Amendment's prohibition against cruel and unusual punishment proscribes deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To succeed on his § 1983 claim for deliberate indifference, Scott must show (1) "a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) the defendants' "response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quotation omitted).  "This includes both an objective standard—that the deprivation was

serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quotation omitted).

"To meet the objective element of the standard, a plaintiff must demonstrate the existence of a serious medical need." *Id.* To show a serious medical need, the plaintiff must demonstrate that "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett*, 439 at 1096 (quotation omitted).

The subjective prong considers whether "the defendant's response to the need was deliberately indifferent." *Id.* "[T]o show deliberate indifference, the plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (quotation omitted). Deliberate indifference may also be shown "when prison officials deny, delay or intentionally interfere with medical treatment." *Jett*, 439 F.3d at 1096 (quotation omitted). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997).

Viewing the facts in the light most favorable to the defendants, there remains a genuine dispute over whether the defendants were deliberately indifferent. Although both experts agree the cancer diagnosis was "irresponsibly" or "unacceptably" delayed, the defendants' expert also noted that there are significant barriers to providing medical care in the prison setting and during the COVID pandemic. ECF Nos. 44-1 at 31; 44-3 at 3. Former NDOC medical director Dr. Minev also testified that although eight to nine months would not be an expedient timeframe for

4

a colonoscopy under "normal circumstances," Scott's delay occurred during the height of the COVID-19 pandemic. ECF No. 46-4 at 25.  However, the defendants do not point to any evidence showing that Scott's colonoscopy was delayed due to COVID, only studies showing general delays during that time.

Nevertheless, Scott was treated for many years for hemorrhoids, and it was a medical visit related to his hemorrhoids that first prompted the colonoscopy request. ECF No. 48-1 at 9. Scott continued to be seen for hemorrhoid pain while his colonoscopy request was delayed. *Id.* at 8-9.  Although it is a close call, a reasonable juror could believe that the defendants attributed Scott's symptoms to hemorrhoids and did not appreciate the risk associated with delaying the colonoscopy until Scott's condition worsened. *See Estelle*, 429 U.S. at 105-06 (inadvertent or negligent medical treatment is not enough to show deliberate indifference).

There is also a genuine dispute about the degree to which Scott was harmed by the delay. A delay of care, without more, "is insufficient to state a claim of deliberate medical indifference." *Shapley v. Nev. Bd. of State Prison Com'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Scott must show that the delay was harmful. *Id.*  The defendants' expert opined that rectal cancer is slow growing, Scott likely had rectal cancer in December 2019, and Scott likely would have needed the same treatment he eventually received. ECF No. 44-3 at 3-4.  Scott's expert acknowledged that it is not possible to know when his cancer formed but opined that earlier detection would have resulted in an easier course of treatment. ECF No. 44-1 at 27-31.

However, Scott also experienced several related health episodes during the period his cancer went untested and untreated that resulted in complaints of pain, discomfort, and at least one trip to the emergency department. *See* ECF Nos. 48-1 at 18-19, 45; 44-2 at 3.  The defendants do not dispute that Scott experienced pain from these episodes or that they were

5

products of his cancer. Scott's expert opined that colorectal cancer is known to cause chronic constipation and there is no other potential cause documented in his medical record. ECF No. 44-1 at 27. So, it is not disputed that Scott suffered pain, but there is a genuine dispute whether he would have still experienced pain and invasive treatments even if the cancer had been detected earlier.

A reasonable juror could hear testimony about the Scott's hemorrhoid treatment and conclude that the defendants were not deliberately indifferent to his risk for colorectal cancer. Likewise, a reasonable juror could conclude that Scott would have suffered the effects of his cancer and its treatment even if it had been detected promptly. But there is no genuine dispute that Scott experienced painful symptoms during the delay. I therefore grant Scott's motion as to whether he experienced pain and deny it on all other issues.

### B. The defendants are entitled to qualified immunity for Scott's claims related to illegible signatures but not his claims related to his cancer diagnoses.

The defendants assert that they are entitled to qualified immunity on Scott's § 1983 claims, raising the defense in both their opposition to Scott's motion for summary judgment and their own motion. They argue that Scott has not met his burden to show that the defendants violated Scott's rights and that the rights were clearly established. Scott responds that his rights to adequate medical care and filing grievances were clearly established and the defendants' actions violated those rights.

To determine whether to grant qualified immunity, I consider whether "(1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021). I may address the two prongs in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Scott

bears the burden of showing that the right at issue was clearly established. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

"A government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (simplified). The plaintiff does not need to identify "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* I make this second inquiry "in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson*, 555 U.S. at 236-244. I must avoid addressing qualified immunity at a high level of generality. *Ashcroft*, 563 U.S. at 742. Rather, I must consider the specific facts of the case and determine whether an official would know his or her actions violated clearly established law in those particular circumstances. *City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 43-44 (2019). "Qualified immunity is an immunity from suit rather than a mere defense to liability," so if the defendants are entitled to qualified immunity, my analysis stops there. *Pearson*, 555 U.S. at 237 (quotation omitted).

<u>1. Scott's right to adequate medical care was clearly established and genuine disputes of material fact remain on whether the defendants violated that right.</u>

I previously held that it was clearly established in January 2020 that prison officials delaying diagnostic testing or medical treatment that causes an inmate harm can constitute

7

deliberate indifference. ECF No. 25 at 10-11.  The cases I acknowledged at that time still apply to the delayed diagnosis and treatment of Scott's cancer.[3]

Scott has also raised genuine issues of material fact over whether the delay in his cancer diagnosis and treatment violated this right.  The defendants concede that Scott's cancer was a serious medical condition. ECF No. 50 at 12.  And they acknowledge that an NDOC doctor ordered a colonoscopy in January of 2020 and that the NDOC Utilization Review Panel (URP) considered approval of this colonoscopy from March 4, 2020 until September, 2020 after Scott collapsed on a work assignment and was sent to an emergency department. *Id.* at 3-5.

The defendants assert that the delay was a reasonable difference of opinion between medical providers, and NDOC officials opted for a conservative course of treatment that included waiting for a fecal occult blood test.  But even if that were the case, a reasonable juror could find that the defendants were deliberately indifferent because NDOC took until June 1, 2020, to conduct the fecal occult blood test, even though the tests are available at every NDOC facility. ECF Nos. 48-1 at 58; 46-4 at 13.  And even after obtaining a positive fecal occult blood test, the URP deferred Scott's colonoscopy 11 more times. ECF No. 44-3 at 3.  The defendants' expert also opined that NDOC had not met the standard of care by waiting on this test because a colonoscopy would still be necessary with a negative result. *Id.*  And one of Scott's treating

---

[3] See *Jett*, 439 F.3d at 1094-95, 1097-98 (finding a triable issue of fact regarding a doctor's deliberate indifference when a prisoner did not see an orthopedic doctor to set his broken bone for over six months, leading to improper healing, though the prisoner continuously complained of pain and requested follow-up); *Farley v. Capot*, 384 F. App'x 685, 686-87 (9th Cir. 2010) (holding the district court erred in dismissing a deliberate indifference claim against a physician whose unexplained actions caused a two-month delay in the prisoner's cancer surgery, leading to further serious harm and unnecessary pain); *Egberto v. Nev. Dep't of Corr.*, 678 F. App'x 500, 503-04 (9th Cir. 2017) (finding a genuine issue of material fact regarding prison official's deliberate indifference when an MRI ordered for prisoner's back pain was delayed six months and, drawing all reasonable inferences in the prisoner's favor, his back conditioned worsened).

8

physicians was unsure why the test was ordered because blood was already visible in Scott's feces. ECF No. 46-5 at 40.

Scott also raises a genuine dispute of material fact over whether the defendants were deliberately indifferent by failing to treat his prostate cancer. NDOC officials were aware that Scott had a mass on his prostate from his December 10, 2020 MRI, which was diagnosed as stage II prostate cancer on February 28, 2021. ECF No. 48-1 at 24, 30. Scott maintains that he did not receive any specific treatment for his prostate cancer until after he was released from NDOC custody in December 2021. NDOC points to two biopsies of Scott's prostate mass and several treatments for his colorectal cancer to show they provided treatment for his prostate cancer. Expert testimony will be necessary to determine whether treating Scott's colorectal cancer constituted adequate medical care for his prostate cancer.

Finally, as I explained in my analysis of Scott's motion for summary judgment, Scott has demonstrated that he suffered pain, and there is a genuine dispute of material fact as to whether Scott suffered other harm as a result of these delays. In January 2020, the law clearly established that delaying diagnosis or treatment of a known medical condition resulting in harm could constitute deliberate indifference to a serious medical need. And Scott raises genuine disputes of material fact whether the defendants were deliberately indifferent and whether he suffered harm from the delay. I therefore deny the defendants' motion as to Scott's §1983 claims for his delayed cancer diagnoses and treatment.

### 2. Scott has not raised a genuine dispute of material fact that illegible medical records violated his clearly established rights.

Scott alleges that State officials and prison administrators instituted a deliberate policy of illegibly signing medical records to make it more difficult for inmates to file grievances relating

to medical care. ECF No. 26 at 30 (Count VII).  The defendants deny any such policy, custom, or practice and argue that Scott has not carried his burden of showing one existed or that it would violate clearly established law to have such a policy.

Prisoners retain a First Amendment right to file grievances. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).  The only evidence Scott identifies in support of this claim is that his NDOC medical documents contain illegible signatures while medical documents prepared by outside providers do not.  Scott does not identify any evidence that the defendants instituted a deliberate policy of illegible signatures or that the illegible signatures impeded his ability to file grievances or this lawsuit other than the inconvenience of having to initially name Doe defendants.  The defendants submitted declarations from the relevant officials denying that there is any policy, custom, or practice of illegibly signing medical records to prevent inmates from filing grievances. *See* ECF Nos. 50-1; 50-11 through 50-15.  Scott does not rebut this evidence and does not seem to have even inquired about such a policy during Dr. Minev's deposition.

Scott also fails to raise a genuine dispute of material fact as to whether illegible signatures show deliberate indifference to a serious medical need.  He does not identify any evidence showing that an intentionally illegible signature was the reason any of his medical care was delayed or that he was unable to advocate for his own care because of an illegible signature.

Even if Scott could demonstrate that an intentional policy, practice, or custom of illegibly signing medical documents violated his rights, the defendants would be entitled to qualified immunity.  Scott points to *Farmer v. Brennan*, 511 U.S. 825 (1994) and *Bruce v. Ylst*, 351 F.3d 1283 (9th Cir. 2003) for the general propositions that he has the right to adequate medical care and the right to file grievances.  But neither of these cases involved illegible signatures or anything similar.  Although a case need not be "on all fours" with the facts of Scott's case, "the

existing caselaw must have placed the statutory or constitutional question beyond debate . . . in light of the specific context of the case." *Bird v. Dzurenda*, 131 F.4th 787, 790 (9th Cir. 2025) (simplified). Scott does not identify any cases where illegible records violated a prisoner's right to medical care or his right to file grievances. Thus, it was not "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015) (quotation omitted).

Because Scott has not raised a genuine dispute of material fact showing that a policy, practice, or custom of illegible signatures violated his clearly established rights, the defendants are entitled to qualified immunity. Thus, I grant the defendants' motion for summary judgment on Scott's § 1983 claims related to illegible signatures.

### 3.  Dr. Minev sufficiently participated in delaying Scott's colonoscopy.

The defendants argue that Dr. Minev did not personally participate in the decisions that delayed Scott's colonoscopy because he was the medical director and did not personally provide medical care to Scott. They further argue that Dr. Minev's role in leading the URP was limited because he did not participate in URP discussions after March 2021. Scott responds that Dr. Minev attended the first three URP meetings to consider Scott's colonoscopy and was personally involved with the decision to defer his request.

A government official is liable under § 1983 only for his or her own misconduct. *OSU Student All. v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012). Liability can be established where the official either (1) "subjects" another to the deprivation "if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do" or (2) "causes" a deprivation by direct personal participation or "by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the

11

constitutional injury." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (quotation omitted). For an official to be liable for a subordinate's deprivation, "that official must have at least the same level of intent as would be required if the official were directly" involved in the deprivation. *Id.* at 916.

A genuine dispute remains whether Dr. Minev was deliberately indifferent to Scott's medical condition. Dr. Minev oversaw three URP meetings that considered Scott's colonoscopy request. ECF No. 50-2 at 23. Because these were the first three meetings to consider the request, this was likely when the decision was made to defer Scott's colonoscopy for fecal occult blood testing. *See id.* at 12. Dr. Minev testified to this decision, that those tests were readily available at the facility, that he did not recall instructing the providers to perform the fecal occult blood testing, and that the URP deferring matters for more than six months like it did for Scott was not typical. *Id.* at 12-13. Although he was not present for the later URP meetings, Dr. Minev was the medical director for the entire relevant period and retained responsibility for overseeing the URP. *Id.* at 24. A reasonable juror could interpret this information along with the expert opinions that this testing was an unnecessary delay and find that Dr. Minev was deliberately indifferent to Scott's delayed cancer diagnosis and treatment. I therefore deny the defendants' motion as to Dr. Minev's personal involvement.[4]

### C. There is a genuine dispute of fact whether Scott may claim punitive damages.

The defendants argue that Scott has not raised a genuine dispute of material fact over whether the defendants' actions warrant punitive damages. Scott responds that the same circumstances supporting his claim for deliberate medical indifference justify punitive damages.

---

[4] Because I grant the defendants summary judgment on Scott's claims related to illegible signatures, I need not consider the defendants' separate arguments about sufficient personal involvement by various defendants who are named only in the illegible signature claims.

A jury can consider punitive damages for "reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law." *Smith v. Wade*, 461 U.S. 30, 51 (1983). Among the elements Scott must prove for his deliberate medical indifference claims is that the defendants were deliberately indifferent in response to his serious medical need. *See Jett*, 439 F.3d at 1096. Because there is a significant overlap between deliberate indifference and reckless or callous disregard, the same facts that support Scott's deliberate medical indifference claim could support punitive damages for that claim.[5] Thus, I deny the defendants' motion for summary judgment as to punitive damages.

### D. I lack subject matter jurisdiction over Scott's state constitutional claims.

The defendants argue that I lack subject matter jurisdiction over Scott's claims under Article 1 § 6 of the Nevada Constitution because Nevada's waiver of sovereign immunity for state officials is limited to suits that also name the State, and Nevada has not waived its Eleventh Amendment immunity from suit. The defendants further argue that even if I had subject matter jurisdiction, there is no private right of action under Article 1 § 6. Scott responds that another court in this district has found a private right of action and that his claims arise under the state constitution, so he need not comply with the statutory requirement to join the State to his suit.

The Eleventh Amendment prohibits suits against a state or its agencies in federal court without the state's consent. *O'Connor v. State of Nev.*, 686 F.2d 749, 750 (9th Cir. 1982). Eleventh Amendment immunity implicates federal subject matter jurisdiction in a way similar to

---

[5] *Compare* Ninth Circuit Model Civil Jury Instructions §§ 5.5 Punitive Damages ("Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law") *with* 9.27 Conditions of Confinement/Medical Care ("Deliberate indifference is the conscious choice to disregard the consequences of one's acts or omissions." (quotation omitted)) (Mar. 2025).

13

an affirmative defense that Nevada has the burden of proving. *ITSI T.V. Prods., Inc. v. Agric. Ass'ns*, 3 F.3d 1289, 1291 (9th Cir. 1993). Nevada has explicitly refused to waive its Eleventh Amendment immunity and "section 1983 does not constitute an abrogation of the eleventh amendment immunity of the states." *Id.*; Nev. Rev. Stat. § 41.031(3). Unless Nevada waives its Eleventh Amendment immunity, federal courts lack jurisdiction to review claims against it. *Quillin v. State of Or.*, 127 F.3d 1136, 1138 (9th Cir. 1997).

Nevada has waived its sovereign immunity for state tort actions against state employees and officers arising out of their public duties or employment. Nev. Rev. Stats. §§ 41.031(1); 41.0337. But Nevada conditions this waiver by requiring the plaintiff to name the state or appropriate political subdivision as a party defendant. *Id.* The Nevada Court of Appeals has recognized that although § 1983 has abrogated sovereign immunity in suits against state employees in their individual capacities, state tort claims brought in the same lawsuit must name the State as a party under Nevada Revised Statutes §§ 41.031 and 41.0337. *Craig v. Donnelly*, 439 P.3d 413, 416 (Nev. App. 2019).

To bring his state law claims against these state employees for acts within the scope of their duties or employment, Scott must also name the state or appropriate political subdivision. He has not, and is unable, to name the state or NDOC as defendants in this court due to Eleventh Amendment immunity, which Nevada has not waived. Scott must therefore pursue these claims in state court. Thus, I dismiss his state law claims without prejudice because I lack subject matter jurisdiction.

/ / / /

/ / / /

/ / / /

14

## II. CONCLUSION

I THEREFORE ORDER that plaintiff Steven Scott's motion for summary judgment **(ECF No. 44) is GRANTED in part**. I grant Scott summary judgment on the issue of pain during the delay in his diagnosis but deny it on all other grounds.

I FURTHER ORDER that the defendants' motion for summary judgment **(ECF No. 50) is GRANTED in part**. I grant the defendants summary judgment on Scott's claims based on illegible signatures, dismiss Scott's state law claims without prejudice, and deny the defendants' motion on Scott's other claims.

I FURTHER ORDER that the defendants' motion to seal **(ECF No. 47) is GRANTED**.

DATED this 14th day of August, 2025.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE